## No. 11,117.

SMITH v. McFERSON, BANK COMMISSIONER.

Decided April 6, 1925.

Action to cancel assignment of claim against an insolvent bank. Judgment for plaintiff.

*Reversed.*

1.  EVIDENCE—*Weight.* As between an ex parte affidavit of an interested party, and detailed evidence in court of a disinterested witness, the former is of little force.

2.  BANKS AND BANKING—*Assignment of Claim.* In an action by a bank commissioner to cancel assignment of claim against an insolvent bank, evidence held to show that the claim was collateral for an unpaid $7,500 note, and not for one of $10,000 which had been paid, as claimed by the commissioner.

3.  EVIDENCE—*Banks and Banking.* In an action involving the issue as to which of two notes an assigned claim against an insolvent bank was collateral, evidence of an offer by the holder of one note to surrender the collateral on payment of its note, held inadmissible against the holder of the other note.

4.  BANKS AND BANKING—*Cancellation of Assignment—Burden.* In an action by a bank commissioner to cancel an assignment of a certificate of deposit issued by an insolvent bank, and which was claimed by him to be held as collateral to a note which had been paid, the burden was upon plaintiff to establish his claim.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. CHARLES H. THOMPSON, Messrs. DANFORTH & KAVANAUGH, for plaintiff in error.

Mr. HOMER S. McMILLIN, for defendant in error.

*Department Two.*

MR. JUSTICE DENISON delivered the opinion of the court.

THIS proceeding was a petition filed in the matter of the Stoneham State Bank, in liquidation, by McFerson, bank commissioner, to cancel an assignment to Smith, plaintiff in error, of a claim against the Stoneham State Bank, insolvent and in the hands of said commissioner. He obtained the order of cancellation and Smith brings error.

By what right this cancellation was decreed in a collateral proceeding, instead of by civil action under the Code, we do not know, but since no objection or assignment is made on that ground, we do not notice it except to say that we are not to be considered as intimating anything as to its validity. The sole question for us is whether the judgment is supported by the evidence.

The facts shown are these: .The bank was in a precarious condition and in November and December, 1920, Smith loaned its cashier, R. K. Niederjohn, $17,500, which was immediately given to the bank. Of this sum $10,000 was in notes signed by R. K. Niederjohn, his wife and H. G. Niederjohn, his father, who was solvent and whose estate ultimately paid them. The remaining $7,500 was in three notes of $2,500 each and was secured by collateral which consisted of a number of small notes of various persons payable to the bank. December 1, 1920, when the $10,000 was given to the bank, it issued to R. K. Niederjohn its certificate of deposit for that amount, due in sixty days. April 23, 1921, after the commissioner had taken charge of the Stoneham Bank, R. K. Niederjohn assigned the certificate of deposit and his claim thereon against the insolvent to Smith, as additional collateral. · Niederjohn testifies that it was collateral to the $10,000 only; Timmons, Smith's agent, who received it from R. K. Niederjohn, testifies that it was for the $7,500 only. The assignment itself, in writing, is unqualified. The sole question before the court below was which story was true. The plaintiff in error claims that undisputed evidence shows

that Smith is right and Niederjohn is wrong. To this we agree.

All the principal and collateral notes were first placed by Smith in the Commonwealth National Bank of Kansas City, on what terms does not appear. Afterwards he transferred the three notes for $7,500, one to Blanche Lee, one to Edward F. Swinner, et al., and one to the Liberty National Bank of Kansas City. Smith still held the collateral.

In April, 1921, Smith sent Timmons to Stoneham to investigate the condition of the collateral to the $7,500 notes. There is no evidence that he had any authority in regard to the $10,000. The evidence is that he had not. He obtained the certificate as above stated. Mr. Niederjohn's evidence on this is in an ex parte affidavit, received without objection, which states without evidential detail "that he made such assignment for the express purpose of securing" the $10,000 and "not for the purpose of securing any other notes." Timmons, on the other hand, testified in person and with detailed evidential facts, including the substance of the conversation in which Niederjohn consented to assign, which shows that it was made for the $7,500; there was, moreover, a cross-examination. As between these two, the ex parte affidavit of a deeply interested party is of very little force.

Timmons, moreover, is supported by the fact that he had no authority concerning the $10,000 note, and that his receipt for the collateral notes securing the $7,500 which he gave the Commonwealth Bank when he went to Stoneham, shows that they were the only things he took. Also he made a long report to Smith which is in evidence without objection, which shows that he took the assignment as *additional* collateral; but there was no collateral with the $10,000. In this report he makes no mention of the $10,000 except to state the source of the certificate of deposit. This report is convincing beyond dispute that Timmons was not attempting to act in regard to the $10,000 notes.

Some correspondence between R. K. Niederjohn and Smith is made the basis of much argument, but it has no bearing on the question before the court. It will not bear the meaning counsel for defendant in error seeks to put on it.

The Commonwealth Bank once offered to surrender the certificate to R. K. Niederjohn if he would pay the $10,000 note, but this is not competent evidence against Smith, and when the $10,000 was paid R. K. Niederjohn did not demand the certificate.

It is claimed that the fact that R. K. Niederjohn asked the Commonwealth bank if they would release the certificate if the $10,000 were paid shows that he thought it was collateral to that debt. If it shows anything it seems to us to show the contrary. If it was collateral to that sum only he could demand its release on payment, there was no occasion to ask whether they would do so.

It is claimed that even if the certificate was originally collateral for only the $7,500 notes the judgment of the court can be sustained on the ground that the bank was, at the time it agreed to surrender the certificate, the owner of all the notes and collateral free of all rights of Smith of which there is no evidence, nor is there evidence of a valid agreement.

There are some other arguments of defendant in error which are intended to show that there is evidence to support the judgment, which we think it is not necessary to notice except to say that we have carefully considered them.

Adding to what we have said the fact that the burden is on petitioner to show by a preponderance of the evidence that the certificate was collateral for the $10,000 only, we must say that there is no evidence sufficient to support the judgment.

Judgment reversed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE WHITFORD concur.